IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| MARIA SALAS, an Individual, and as Parent and Next Friend of ADRIAN SALAS and ISAIAH SALAS, Minor Children,<br><br>      Plaintiffs,<br>vs.<br><br>DILLARD'S INCORPORATED, a Delaware Corporation; KAY HERNANDEZ, in her Official and Individual Capacity; and JEFF WALKER, in his Official and Individual Capacity,<br><br>      Defendants. | No. CIV 98-0381 PK/DJS |

MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Defendants' Kay C. Hernandez and Jeff Walker Motion For Summary Judgment (Summary Judgment Motion) primarily on qualified immunity grounds filed March 30, 1999 (doc. 37), and the court, being advised fully in the premises, finds that the motion should be granted on the federal civil rights claim, and the supplemental state law claims against these Defendants should be dismissed without prejudice.

Background

In Count I of the amended complaint (doc. 2), Plaintiffs seek damages under 42 U.S.C. § 1983 and the Fourth Amendment based upon on alleged unreasonable searches and seizures that occurred after Defendant Dillard's (store) accused Plaintiff Maria Salas (Plaintiff) of shoplifting and Defendants Hernandez and Walker (of the Las Cruces Police Department) responded. Plaintiff Maria Salas was arrested and her two children (Plaintiffs Adrian and Isaiah Salas (minor Plaintiffs)), were transported to the police station with her. Plaintiffs also include supplemental state law claims against Defendants Hernandez and Walker including false arrest (Count II), false imprisonment (Count III), and battery (Count IV) (against Defendant Walker only). Plaintiffs seek leave to amend their amended complaint to allege that the Defendant officers failed to investigate, a claim completely addressed below in the context of the § 1983 action.

Plaintiffs allege the following bearing upon qualified immunity. On December 19, 1997, at approximately 7:00 p.m., Plaintiff Maria Salas went to the store to both purchase merchandise and return merchandise that had been purchased on December 14, 1997. She first went to the customer service department to retrieve a bag (from another store) she had previously left. Thereafter, she went to the shoe department and exchanged one pair of shoes and purchased another. She was later given a large clear shopping bag with handles

by store personnel. She then went to the children's department and shopped. While she was standing at the cash register in an attempt to exchange and purchase some items, Plaintiff was accused of shoplifting by concealing merchandise. She and her children were then detained first, by store security, and then by the Defendant officers. At approximately 11:00 p.m., Plaintiff and her children were released from custody. No shoplifting charges were filed, but the store's loss prevention officer filed a misdemeanor criminal complaint against her. This complaint was dismissed with prejudice by the municipal court.

According to store's loss prevention officer, Plaintiff was observed, for one hour and ten minutes, pulling receipts from her purse, comparing the receipts to merchandise tags and constantly looking up at the department sales associate. See Summary Judgment Motion, Ex. A at 24, 27, 114 (Maynes Dep.). Plaintiff denies this. See Response to Defendants Hernandez's and Walker's Motion for Summary Judgment (Plaintiff's Response) filed Mar. 30, 1999 (doc. 39), Ex. M at 1 (Salas Aff.). The store's loss prevention officer further testified that once Plaintiff matched an item, she would take the item into a corner or a dressing room, sometimes kneeling down and then returning to the sales floor without the item. See Summary Judgment Motion, Ex. A at 32, 38, 112-115 (Maynes Dep.). The store security officer observed several clothing items inside Plaintiff's bags when he approached at the cash register. See id. at 44, 64, 118-20, 130. Plaintiff did not have a receipt for a pair of corduroy pants and other items in the bags.

See id. at 119-20, 129. Hangers were also found in the bags. See id. at 51.

## Discussion

### A. Official Capacity

In moving for summary judgment and seeking dismissal of the complaint against them, the Defendant officers explicitly contend that the minor Plaintiffs have no basis to make a claim against the City of Las Cruces and implicitly contend that neither does Plaintiff Maria Salas. Although Plaintiffs have named Defendants Hernandez and Walker in their official capacities, an official capacity suit is really one against the employing municipality, the City of Las Cruces. See Lopez v. LeMaster, No. 98-6203, 1999 WL 203054, at *6 (10th Cir. Apr. 9, 1999); Myers v. Oklahoma County Bd. of County Comm'rs, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998). Plaintiffs have not alleged, let alone come forward with any evidence, tending to establish a municipal custom or policy responsible for the constitutional violations alleged and vicarious liability will not suffice. See Board of the County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 402-04 (1997); Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998). The official capacity claims must fail.

### B. Individual Capacity--Qualified Immunity

The Defendant officers have moved for summary judgment on qualified immunity grounds. "[G]overnment officials performing discretionary functions

generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The qualified immunity defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

In deciding qualified immunity, "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Conn v. Gabbert, 119 S. Ct. 1292, 1295 (1999). Only if the plaintiff establishes a violation of the right does the court consider whether the right was clearly established. See Siegert v. Gilley, 500 U.S. 226, 232 (1991). If a plaintiff has sufficiently alleged specific conduct resulting in the deprivation of a federal right, a defendant has the burden of demonstrating that no genuine issue of material fact would defeat qualified immunity. See Fed. R. Civ. P. 56(c); Romero v. Fay, 45 F.3d 1472, 1475 (10th Cir. 1995). In making this assessment, the evidence is viewed in the light most favorable to the nonmovant, but disputes about immaterial matters will not preclude summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Baptiste v. J.C. Penney Co., 147 F.3d 1252 (10th Cir. 1998).

The predicate of the federal claims against the Defendant officers in this

case is whether a proper warrantless arrest of the Plaintiff was made. A warrantless arrest requires probable cause–the issue is "whether, at the moment the arrest was made, the officers had probable cause to make it–whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). The Court has recognized that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, . . . [yet] in such cases those officials–like other officials who act in ways they reasonably believe to be lawful–should not be held personally liable." Anderson v. Creighton, 483 U.S. 635, 641 (1987). Qualified immunity is appropriate "if a reasonable officer could have believed that probable cause existed to arrest [a suspect]." See Hunter v. Bryant, 502 U.S. 224, 228 (1991). The Court has cautioned that qualified immunity is ordinarily a legal inquiry and courts must avoid resolving it based upon "whether another reasonable, or more reasonable, interpretation of the events can be constructed . . . years after the fact." Id. As an objective inquiry, "[e]vidence concerning the defendant[ official's] subjective intent is simply irrelevant to [the qualified immunity] defense." Crawford-El v. Britton, 118 S. Ct. 1584, 1592 (1998).

In Baptiste, the court affirmed the denial of qualified immunity for the

defendant officers where the plaintiff had been arrested for shoplifting upon a referral from store security guards. See Baptiste,147 F.3d at 1260. The incident in question was videotaped, and one of the officers viewed at least portions of the videotape. See id. at 1257. Accordingly, reliance upon store security guards' allegations was unreasonable, particularly where the videotape was completely consistent with the account of the plaintiff and did not suggest shoplifting in any way. See id. The court reaffirmed that "officers may not ignore easily accessible evidence and thereby delegate their duty to investigate and make an independent probable cause determination based on that investigation." Id. at 1259 (relying on Lusby v. T.G. & Y. Stores, Inc., 749 F.2d 1423, 1432 (10th Cir. 1984), cert. granted and vacated on other grounds, 474 U.S. 805 (1985), aff'd after reconsideration, 796 F.2d 1307, 1312 (10th Cir. 1986) (record contained adequate evidence of city custom or policy of not making any independent investigation to support probable cause determination)).

In this case, Defendant Walker indicates that although he arrived at the store fifteen minutes prior to Defendant Hernandez, Detective Hernandez made the probable cause determination. See Summary Judgment Motion, Ex. D at 1 (Walker Aff.) Defendant Walker ultimately was requested to transport Plaintiff to the police department, and Defendant Walker believed probable cause existed to arrest Plaintiff for shoplifting. See id. at 2. Apparently, Defendant Walker interviewed the loss prevention officer, the Plaintiff, and a sales associate upon

his arrival. See id., Ex. A at 77 (Maynes Dep.).

Prior to the arrival of Defendant Hernandez, another officer questioned Plaintiff about allegations by store security that Plaintiff had concealed merchandise, including two packages of underwear, a pair of black pants and a pair of overalls. See id., Ex. C at 2-3 (Hubbard Aff.). According to the officer, Plaintiff conceded that she put certain items in her bag and took them over to the cash register. See id. at 2.

Defendant Hernandez indicates that her actions were based upon the following investigation and information: (1) she was told that Plaintiff had $254 of merchandise that matched the inventory numbers on a receipt (dated Dec. 14, 1997) for previously purchased merchandise, (2) she was told that store security personally had observed Plaintiff comparing items in inventory to receipts, (3) she was told that $53.50 in merchandise (not on any receipt) had been concealed in a bag; (4) she was presented with a written statement from the Plaintiff obtained by store security, denying intent to take any items without paying, but stating Plaintiff did not realize that she had put some of the items in the bag prior to paying, (5) she reviewed written statements by store personnel and mall security, and was told that in a taped conversation Plaintiff had admitted concealing, (6) she interviewed Plaintiff and Plaintiff said that she did not mean to take the items in her bag and did not realize it was wrong. See id., Ex. B at 2-3 (Hernandez Aff.). After Plaintiff had been transported to the police

department, Defendant Hernandez administered a <u>Miranda</u> warning. Plaintiff again maintained that she did not know it was wrong to put items in the bag and she had meant to pay for them. See <u>id.</u> at 4. Defendant Hernandez talked with Plaintiff's older child and called the store requesting documentation addressing whether a hands-on count of the inventory revealed a shortage of the matching items. See <u>id.</u> at 4-5. When this was not forthcoming, Defendant Hernandez released the Plaintiff. See <u>id.</u>

In New Mexico, shoplifting includes not only "willfully taking possession of any merchandise with the intention of converting it without paying for it," but also "willfully concealing any merchandise with the intention of converting it without paying for it." N.M. Stat. Ann. § 30-16-20(A)(1) & (2) (Michie 1994). State law creates a presumption that a person who willfully conceals merchandise among his belongings is "prima facie presumed to have concealed the merchandise with the intention of converting it." <u>Id.</u> § 30-16-22. Likewise, if any merchandise is found concealed among a person's belongings, that too is prima facie evidence of willful concealment. See <u>id.</u>

It is apparent that the Defendant Officers are entitled to qualified immunity on Plaintiff's Fourth Amendment claims because an objectively reasonable probable cause determination preceded her arrest and detention. The record reveals adequate independent investigation by law enforcement officers; indeed, Defendant Hernandez was called to the scene to help determine whether probable

cause existed, after two other officers had investigated. The officers had conflicting accounts of what occurred, and made an objectively reasonable and independent determination after considering Plaintiff's account. Defendant Hernandez continued her investigation while the Plaintiff was in custody, and ultimately decided to release the Plaintiff when the store did not furnish inventory records that would confirm a shortage of the matching items. Defendant Hernandez's actions were the paradigm of objective reasonableness.

It is also apparent the Defendant officers are entitled to qualified immunity on the minor-Plaintiffs' Fourth Amendment claims because the brief protective custody they were subjected to was objectively reasonable. As succinctly stated by counsel for Defendants Hernandez and Walker, "[i]t would have been unreasonable to leave two small children alone in the mall with no adult supervision while their mother was transported to the Las Cruces Police Department." Memorandum in Support of Motion for Summary Judgment filed Mar. 30, 1999 at 6 (doc.38); see also Armijo v. Wagon Mound Pub. Sch., 159 F.3d 1253, 1262-63 (10th Cir. 1998) (discussing substantive due process claim under danger-creation theory).

Plaintiffs advance several reasons as to why qualified immunity is not appropriate, none of which are persuasive. First, while it is true that the loss prevention officer testified that he did not see Plaintiff put any items into her bags, see Plaintiff's Response at 3-4, he also testified that she took items to a

corner or dressing room, return without them, and he apprehended her with those items in her bags. A reasonable inference is that Plaintiff placed those items in the bags. Second, Plaintiffs points to a raft of items that simply do not involve the operative facts of the qualified immunity determination; included in this category are: (1) the identity of the officer who transported the Plaintiff or her children to the police department, (2) police department logs purportedly indicating that Defendant Hernandez intended to transport juvenile prisoners before making any independent determination of probable cause, and (3) the color of the coveralls found in Plaintiff's bag. See id. at 5, ¶ 1 & 3, at 9, ¶ 10.

Third, relying upon Baptiste, 147 F.3d at 1260, Plaintiffs claim that a genuine issue of material fact remains as to whether Defendant Walker made an independent probable cause determination or relied upon that of Defendant Walker. See Plaintiffs' Response at 4-5. The record indicates that Defendant Hernandez made the ultimate determination, but that it was supported by Defendant Walker. See Summary Judgment Motion, Ex. D (Walker Aff.). Given that the probable cause determination was objectively reasonable, it matters not whether Defendant Walker relied upon Defendant Hernandez or exercised his own judgment.

Fourth, Plaintiffs contend that the Defendant officers failed to review all the evidence, or ignored readily available evidence. See Plaintiffs' Response at 5, 11. As a preface to resolving this category of contentions, it must be

remembered that "[t]here is no constitutional or statutory requirement that before an arrest can be made the officer must conduct a trial." Morrison v. United States, 491 F.2d 344, 346 (8th Cir. 1974). While an officer must consider the totality of the circumstances and cannot ignore available and undisputed facts, an officer can resolve doubts about credibility in favor of an eyewitness, here, the store's loss prevention officer. See Baptiste, 147 F.3d at 1259.

Plaintiffs suggest that Defendant Walker had no basis for handcuffing and arresting the Plaintiff, other than her detention by store security. See Plaintiffs' Response at 5, ¶ 1. To the contrary, the record indicates that Defendant Walker spoke with the store's loss prevention officer, a sales associate (Amorette Edmondson), the Plaintiff, and his fellow officer, Defendant Hernandez. See Summary Judgment Motion, Ex. A at 77 (Maynes Dep.); id. Ex. C at 3 (Hubbard Aff.).

Fifth, Plaintiffs also fault Defendant Walker for failing to listen to the store's audiotape of a dialogue with the Plaintiff before or after arresting her. See Plaintiffs' Response at 5, ¶ 2. Unlike Baptiste, 147 F.3d at 1257, the audiotape in this case did not record the incident furnishing the basis of the probable cause determination. Given his own investigation and that of Defendant Hernandez, there was no requirement that Defendant Walker listen to the audiotape.

Sixth, Plaintiffs suggest that Defendant Hernandez's statements about her

investigation are inconsistent (a) as to whether she received inventory sheets from the store, (b) with the inventory sheet produced in discovery (a mere listing of items sold and in stock) which indicates that one of the matching items was not in stock, (c) as to whether Plaintiff had a clear shopping bag upon entering the store or was given one by store personnel, (d) about whether Plaintiff retrieved a bag from customer service upon entering the store, and (e) as to whether she could have relied upon the written statement of a store associate (Amorette Edmondson) in making the probable cause determination when the written statement is dated the next day. See Plaintiffs' Response at 5, ¶¶ 4(A)-(D). None of these purported inconsistencies undermine the probable cause determination given the investigation that Defendant Hernandez did make.

Seventh, Plaintiffs also argue that Defendants and store security should have questioned store personnel in the shoe department to corroborate Plaintiff's rightful possession of two pairs of shoes contained in the bags and determine what items Plaintiff had brought into the store. See id. at 7, ¶ 5. As no dispute existed as to the shoes, it would not be reasonable to require the Defendants to interview shoe department personnel prior to making a probable cause determination. Moreover, Plaintiff's dealings in the shoe department do not render it impossible that she committed a shoplifting offense while in the children's department.

Eighth, Plaintiffs argue that Defendant Hernandez's police report does not

identify the particulars of the probable cause determination. See id. at 7, ¶ 6. Defendant Hernandez's affidavit does.

Ninth, Plaintiffs suggest that Defendant Walker's statements about his investigation are inconsistent (a) as to whether he was advised by the loss prevention officer that Plaintiff had a pair of shoes upon entry into the store; and (b) whether he was advised by the loss prevention officer that Plaintiff produced the pants when she attempted to exchange them. See id. at 7-8 ¶¶ 7(A)-(B). Again, taking into account the facts known by the officers involved at the time of the ultimate probable cause determination, that determination was objectively reasonable, regardless of Defendant Walker's later inability to recall the source of the information.

Tenth, Plaintiffs argue, based upon the written report of the loss prevention officer and signed by Defendant Walker, that none of the officers assimilated that the loss prevention officer had not seen Plaintiff until she was in the children's department and had not observed Plaintiff putting items in her bags. See id. at 8, ¶ 8 (citing id., Ex. K (Maynes Report)). Instead, the loss prevention officer was paged to the children's department by a sales associate who reported suspicious behavior by Plaintiff and the loss prevention officer first viewed Plaintiff from behind a security vent. Plaintiffs also point out that one of the items on the previous receipt (Dec. 14, 1997) came from the men's department, and the Defendant officers failed to question how Plaintiff could have come into

possession of that item given the loss prevention officer's account. See id. at 11, ¶ 14. As discussed above, a reasonable inference from the loss prevention officer's account is that Plaintiff placed the items in the bag–the fact that the loss prevention officer did not see the Plaintiff during her entire visit to the store does not invalidate what he did see.

Eleventh, Plaintiffs contend that the officers should have questioned whether the items in Plaintiff's bag were concealed within the meaning of the shoplifting statute, given that the loss prevention officer was able to see the merchandise in the bags and did not allow Plaintiff to complete her transaction at the cash register. The loss prevention officer's observation was triggered by a report of suspicious behavior made by a sales associate. The loss prevention officer's observations are not trumped by Plaintiff's claim that she intended to pay for all of the items. Indeed, when confronted by the loss prevention officer, Plaintiff's conduct could be consistent with guilty knowledge. According to one account, she yelled that she had put one item back, had receipts for everything, and then backed away from the officer behind the counter with the sales associate. See Summary Judgment Motion, Ex. A at 130 (Maynes Dep.).

Twelfth, Plaintiffs suggest that Plaintiff's statements given to store personnel that she did not realize that she put certain items in her bag is not the same as admitting that those items were in the bag. See Plaintiffs' Response at 9, ¶ 11. Plaintiffs urge that the statements are suspect because they were given in

response to assertions by officers and store personnel that Plaintiff had committed a crime. See id. at 10, ¶ 12. Finally, Plaintiffs argue that any merchandise in the bag not fully visible could have shifted from the top when Plaintiff approached the cash register. See id. at 10, ¶ 11. Whether the items were in the bag is a factual matter; based upon statements from a variety of sources, including the Plaintiff, the Defendant officers could make an objectively reasonable probable cause determination on the basis that items were concealed in the bag.

Thirteenth, Plaintiffs fault Defendant Hernandez for transporting Plaintiff to the police department to obtain a statement concerning felony shoplifting and detaining her for 32 minutes after Plaintiff was persuaded to sign the Miranda waiver form. See id. at 10, ¶ 12; at 11, ¶ 15. Plaintiffs' view appears to be that Plaintiff's denial is conclusive evidence that no reasonable officer could have concluded that a shoplifting offense occurred. That is not the case. See Romero, 45 F.3d at 1478 n.3 (limited duty to investigate and credit suspect's story). Defendant Hernandez's actions, including the decision to release Plaintiff pending proof of shortage from the store, were eminently reasonable.

Fourteenth, Plaintiffs fault the Defendant officers because the store did not provide the documentation to prove an inventory shortage, and the store's loss prevention officer testified that an immediate inventory count would be an effective way of determining whether the items Plaintiff allegedly matched were

shoplifted.  See Plaintiffs' Response at 10-11, ¶ 13 (citing id., Ex. L at 74 (Maynes Dep.)).  The loss prevention officer also testified that he had never been asked for an on-hand inventory count when there was no store receipt in concealment situations.  See Summary Judgment Motion, Ex. A at 120 (Maynes Dep.).  Without question, Plaintiff did not have a receipt for several of the items allegedly concealed; this alone was sufficient for a reasonable officer to conclude the existence of probable cause.

Finally, Plaintiffs have offered an affidavit of an expert in police operations, arrest and detention (Ken Barnes), concluding, based upon the purported deficiencies discussed above, that Defendants Hernandez and Walker violated Plaintiff's civil rights by arresting her without probable cause and failing to avail themselves of readily available information that would have confirmed her account.  See Plaintiffs' Response, Ex. A (Barnes Aff.).  This legal conclusion is plainly inadmissible.  See Meyer v. Conlon, 162 F.3d 1264,1272 (10th Cir. 1998) (per curiam); Specht v. Jensen, 853 F.2d 805, 809-10 (10th Cir. 1988) (en banc).

### C. Supplemental State Law Claims

Having determined that Defendants Hernandez and Walker are entitled to qualified immunity on the federal claim, only the supplemental state law claims remain against these Defendants.  When a federal claim no longer supports supplemental jurisdiction, the Tenth Circuit has recognized that, consistent with

28 U.S.C. § 1367(c)(3), the ordinary response will be to dismiss the state claims without prejudice. See Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d 1221, 1237 (10th Cir. 1997); Ball v. Renner, 54 F.3d 664, 669 (10th Cir. 1995). See also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). The court declines to exercise jurisdiction over the state claims against these Defendants; those claims will be dismissed without prejudice.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that Defendants' Kay C. Hernandez and Jeff Walker Motion For Summary Judgment on qualified immunity grounds filed March 30, 1999 (doc. 37) is granted.

IT IS FURTHER ORDERED THAT the state-law claims against Defendants Hernandez and Walker contained in the Amended Complaint (doc. 2) are dismissed without prejudice.

DATED this <u>19th</u> day of May, 1999 at Santa Fe, New Mexico.

*Paul Kelly Jr.*
United States Circuit Judge
Sitting by Designation

Counsel:

Adam D. Rafkin, Adam D. Rafkin, P.C., Ruidoso, New Mexico, for Plaintiffs.

William L. Lutz, Martin, Lutz, Roggow & Brower, P.C., Las Cruces, New Mexico, and Melissa Miller Byrnes, Assistant City Attorney, City of Las Cruces, Las Cruces, New Mexico, for Defendants Kay Hernandez and Jeff Walker.